UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Sara McRedmond

    v.                                             Civil No. 17-cv-127-JD
                                                        Opinion No. 2017 DNH 242
Nancy A. Berryhill,
Acting Commissioner,
Social Security Administration


O R D E R

Sara McRedmond seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of Social Security, denying her application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. McRedmond moves to reverse, contending that the Administrative Law Judge ("ALJ") failed to properly consider the opinion of Dr. Dinan and erred in assessing her residual functional capacity. The Acting Commissioner moves to affirm.

Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276

F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016). Substantial evidence is "more than a mere scintilla." Richardson v. Peralles, 402 U.S. 389, 401 (1971). When the record could support differing conclusions, the court must uphold the ALJ's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted).

## Background

McRedmond is thirty-nine years old. She completed two years of college and earned an Associate's Degree in office management. McRedmond previously worked as an office clerk and a cleaner. In support of her applications for benefits, McRedmond represented that her ability to work was impaired by mental and physical limitations.

Jennifer Whitcher, LCMH, provided mental health counseling to McRedmond. On January 17, 2012, Whitcher completed a form titled "Psychological Capacities" for McRedmond. Whitcher stated that McRedmond had been diagnosed with PTSD and a major depressive disorder that was recurrent and moderate. Whitcher

2

indicated that McRedmond had no deficit and was not limited or had only mild limitations in her abilities to do most activities. She indicated moderate limitations in maintaining attention, sustaining routine without supervision, and performing at a consistent pace. No more severe limitations were found. Whitcher, however, stated that McRedmond was not capable of working.

On February 22, 2012, William Dinan, Ph.D., did a consultative psychological examination of McRedmond. Dr. Dinan observed mild signs of depression and moderate signs of anxiety. He also found that McRedmond was alert and oriented, her memory was adequate, but her concentration was inconsistent. Based on McRedmond's description of her history and activities, Dr. Dinan found that McRedmond's abilities to do a variety of activities and to understand and remember instructions were unimpaired. With respect to task persistence, however, Dr. Dinan found that McRedmond would be highly variable. He found that her ability to maintain attention and complete tasks was limited to basic and familiar tasks and that her pace would be slow. He diagnosed PTSD and a major depressive disorder that was recurrent and mild.

Whitcher completed another "Psychological Capabilities" form on July 9, 2012, and again noted McRedmond's diagnoses of PTSD and recurrent and moderate major depressive disorder. She

again found no limitations or only mild or moderate limitations in McRedmond's abilities to function but also stated that McRedmond was not capable of working.

State agency physician, Dr. Louis Rosenthall, reviewed McRedmond's medical records on October 16, 2012, to evaluate her physical abilities to function. Dr. Rosenthall found that McRedmond could perform a full range of light work without any limitations.

Rexford Burnette, Ph.D, did a psychological evaluation of McRedmond on October 22, 2012. Dr. Burnette reviewed Dr. Dinan's report and examined McRedmond. Based on his examination, he found that McRedmond was tearful and her mood was labile but that she was alert and attentive, able to concentrate and remain on track, and had intact memory. Based on McRedmond's reports, Dr. Burnette found that she had moderate limitations in her ability to do daily activities, moderate loss in the domain of social interactions, and would often have functional loss in work related tasks. He diagnosed dysthymic disorder, generalized anxiety, and chronic PTSD.

State agency psychologist Michael Schneider, Psy.D., reviewed McRedmond's medical records on November 6, 2012, to evaluate her mental abilities. Dr. Schneider found that McRedmond had no limitations in understanding, memory, concentration, and persistence; had moderate limitations in her

4

ability to interact appropriately with the public and her ability to accept instructions and criticisms; and was not significantly limited in her ability to get along with co-workers and to maintain socially appropriate behavior. More specifically, Dr. Schneider found that McRedmond retained the functional capacity to remember and carry out instructions, including complex instructions, for extended periods and to maintain adequate attention and complete a normal work day. Dr. Schneider limited her work function to an environment in which she would be able to avoid the general public and her supervisors would not be overly critical.

In 2013, McRedmond was treated by Dr. Steven Youngs for pain in her left hip and leg. Dr. Youngs found that McRedmond was depressed but showed no acute or apparent distress due to pain and that her gait was normal. Dr. Youngs recommended that McRedmond exercise and lose weight. McRedmond saw Dr. Luchi Quinones in August of 2013 for back pain. After reviewing McRedmond's x-rays, Dr. Quinones advised McRedmond to exercise and prescribed vitamin D, naproxen, and Elavil.

On January 6, 2014, Whitcher prepared a "Summary Note" in which she repeated McRedmond's reports about her prior work experiences and her symptoms. On the mental status examination report, Whitcher stated that McRedmond was well groomed and that she had normal speech, responsive affect, full orientation, good

5

insight, and denied suicidal and homicidal thoughts, obsessions, and compulsions. Whitcher also found that McRedmond was anxious. Whitcher stated that McRedmond was not able to maintain fulltime employment.

McRedmond saw Andrea Berry, D.O., in July and September of 2014. In July, Dr. Berry noted McRedmond's complaints of anxiety but found that she was in no apparent distress although she was tearful. Dr. Berry found that McRedmond was fully oriented and had normal functioning. In September, McRedmond complained of fatigue and muscle pain, but Dr. Berry found she was in no apparent distress.

McRedmond also saw Claire Scigliano, Psy.D., for counseling. Dr. Scigliano prepared a document titled "Treating Physician/Treatment Provider Opinion" on November 10, 2015. Her last treatment session with McRedmond was in July of 2015, but Dr. Scigliano stated that her assessment was also based on a telephone conversation on November 10. Dr. Scigliano assessed McRedmond's ability to function in twenty-three functional domains and found that McRedmond's ability to function was deficient and generally unsatisfactory. Dr. Scigliano also found that McRedmond's stress increased with certain tasks and that she would not be able to handle even part-time work.

A hearing was held on November 12, 2015, before an ALJ.[1] McRedmond was represented by a non-attorney representative. A vocational expert also testified at the hearing.

McRedmond testified at the hearing that her ability to work was limited by her chronic pain, anxiety, and PTSD. She described a typical day that included driving her boyfriend places, doing dishes and laundry, and taking the dog for a walk. She said that on a bad day she would sleep or try to talk herself into getting things done. In response to the ALJ's questions, the vocational expert testified that McRedmond could do her prior jobs as a cleaner and office clerk, and in response to McRedmond's representative's questions the vocational expert testified that McRedmond could do her prior work as a cleaner unless she required supportive supervision or would be absent one day each week.

The ALJ found that McRedmond had severe impairments due to obesity, PTSD, depression, endometriosis, and irritable bowel syndrome. He found that those impairments and in combination with other impairments did not meet or equal impairments listed at 10 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found

---

[1] McRedmond first applied for disability insurance benefits and supplemental security income in 2012. A hearing on McRedmond's applications was held on January 8, 2014, which resulted in denial of her applications. In June of 2015, the Appeals Council remanded the case for further evaluation.

that McRedmond had the residual functional capacity to do light work but limited her to work with only occasional contact with the general public. Based on that assessment, the ALJ found that McRedmond was able to do her past work and that she was not disabled. The Appeals Council denied her request for review on January 30, 2017, making the ALJ's decision the final decision of the Acting Commissioner.

## Discussion

McRedmond moves to reverse the decision on the grounds that the ALJ failed to properly consider the opinion of Dr. Dinan and instead based his residual functional capacity assessment on his own lay evaluation of the medical evidence. The Acting Commissioner moves to affirm, arguing that the ALJ properly considered the opinion evidence and properly assessed her residual functional capacity.

A. Dr. Dinan's Opinion

McRedmond contends that the ALJ erred in failing to address the restriction in Dr. Dinan's opinion that she was limited in concentration and task completion. Specifically, Dr. Dinan found that McRedmond's "abilities to maintain concentration and complete tasks are limited to beginning basic, familiar tasks, and proceeding at a slow pace" and that her ability to tolerate stress in a work environment required "basic familiar job tasks

8

completed at a slow pace with supportive supervision." McRedmond contends that the ALJ failed to include those limitations or explain why he did not accept that part of Dr. Dinan's opinion.

An ALJ is required to consider the medical opinions along with all other relevant evidence in a claimant's record. 20 C.F.R. § 404.1527(b).[2] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." § 404.1527(a)(1). Medical opinions are evaluated based on the nature of the medical source's relationship with the claimant, the consistency of the opinion with the other record evidence, the medical source's specialty, and other factors that support or detract from the opinion. § 404.1527(c). An ALJ may rely on the opinion of a state agency consultant as medical opinion evidence. § 404.1527(e).

---

[2] Because the pertinent regulations governing disability insurance benefits at 20 C.F.R. Part 404 are the same as the pertinent regulations governing supplemental security income at 20 C.F.R. Part 416, the court will cite only Part 404 regulations. See Reagan v. Sec'y of Health & Human Servs., 877 F.2d 123, 124 (1st Cir. 1989).

9

The ALJ primarily relied on Dr. Schneider's evaluation and opinion in assessing McRedmond's residual functional capacity. Dr. Schneider reviewed Dr. Dinan's opinions in making his own assessment but did not acknowledge Dr. Dinan's limitations to familiar tasks and a slow pace because of impairment in concentration. Instead, Dr. Schneider found that McRedmond was able to understand, remember, and carry out even complex instructions for extended periods without special supervision. Dr. Schneider also found, however, that McRedmond would need to work in an environment where the supervisor was not overly critical.

The ALJ adopted Dr. Schneider's assessments except for the requirement of a supervisor who was not overly critical. To address that limitation, the ALJ cited parts of Dr. Dinan's opinion to show that McRedmond would be able to handle criticism. The ALJ apparently overlooked Dr. Dinan's opinion that McRedmond would need supportive supervision. The ALJ further relied on the vocational expert's testimony that a requirement for a supervisor who was not overly critical was a personality trait of the supervisor and not something that she could consider for evaluating the ability to do a job.

The ALJ appears to have relied on results that would support a lack of limitations, while overlooking or ignoring

10

results that would raise concerns.[3]  Although an ALJ is authorized "to piece together the relevant medical facts from the findings and opinions of multiple physicians," Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987), he cannot ignore medical opinion evidence in the record, Nguyen, 172 F.3d at 35.  The ALJ's failure to address the limitations in concentration and pace, found by Dr. Dinan, and his failure to adequately weigh the special supervision requirements found by Dr. Dinan and Dr. Schneider undermine the evidentiary bases for his decision, leaving it without the support of substantial evidence.

B.  Residual Functional Capacity

McRedmond also faults the ALJ for relying on Dr. Schneider's opinion, provided in November of 2012, because she continued to receive treatment that resulted in additional medical records during the intervening years before the ALJ's decision in February of 2016.  She argues that the ALJ impermissibly interpreted the raw medical data generated after November of 2012 to decide that her functional capacity had not

---

[3] McRedmond and the Acting Commissioner dispute the import of Dr. Schneider's review of Dr. Dinan's opinion.  McRedmond contends that Dr. Schneider's review is not relevant, while the Acting Commissioner contends that the ALJ was entitled to rely entirely on Dr. Schneider's opinion.  It is concerning in this case that the ALJ and Dr. Schneider both appear to have missed Dr. Dinan's limitations based on concentration and pace.

11

changed.  The Acting Commissioner contends that the ALJ properly addressed the evidence that post-dated the 2012 opinions.

A state agency reviewing consultant's opinion cannot provide substantial evidence to support an ALJ's decision if the opinion is based on a "significantly incomplete record." Alcantara v. Astrue, 257 Fed. Appx. 333, 334 (1st Cir. 2007); Giandomenico v. Acting Comm'r, Social Security Admin., 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017).  A record is significantly incomplete if it demonstrates a material change for the worse in the claimant's condition.  Alcantara, 257 Fed. Appx. at 334.  An ALJ as a lay person is not qualified to interpret raw medical data to assess its impact on functional capacity unless the impact on the claimant's ability to work would be apparent to a lay person.  Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990).

The ALJ gave little weight to the opinions of McRedmond's counselor, Jennifer Whitcher, and her psychologist, Dr. Claire Scigliano, that were provided after the 2012 state agency opinions and explained his reasons for doing so.  The ALJ discussed medical evidence generated after 2012 and noted comments that McRedmond had improved.  Because the case will be remanded for further proceedings, the court need not decide whether the 2012 opinions were out of date, based on the later medical records.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse and remand (document no. 7) is granted. The Acting Commissioner's motion to affirm (document no. 12) is denied.

The case is remanded for further proceedings under sentence four of § 405(g). The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

*Joseph A. DiClerico, Jr.*
Joseph DiClerico, Jr.
United States District Judge

November 21, 2017

cc: Terry L. Ollila, Esq.
    Robert J. Rabuck, Esq.
    D. Lance Tillinghast, Esq.